IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

BOBBIE JO L.,

       Plaintiff,

  v.                                    Civil Action No.
                                          5:24-CV-1157 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| FOR PLAINTIFF | |
| MEGGESTO, CROSSETT & VALERINO, LLP<br>511 East Fayette Street<br>Syracuse, NY 13202 | KIMBERLY A. SLIMBAUGH, ESQ. |
| FOR DEFENDANT | |
| SOCIAL SECURITY ADMIN.<br>OFFICE OF GENERAL COUNSEL<br>6401 Security Boulevard<br>Baltimore, MD 21235 | CANDACE BROWN CASEY, ESQ. |

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## ORDER

    Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on September 24, 2025, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1)   Defendant's motion for judgment on the pleadings is GRANTED.

---

[1]   This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2) The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:    September 26, 2025
          Syracuse, NY

```
UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------x
BOBBIE JO L.,

                              Plaintiff,

vs.                           5:24-CV-1157

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
-----------------------------------------x
```

Transcript of a **Decision** held during a Telephone Conference on September 24, 2025, the HONORABLE DAVID E. PEEBLES, United States Magistrate Judge, Presiding.


A P P E A R A N C E S

(By Telephone)

| | |
|---|---|
| For Plaintiff: | MEGGESTO, CROSSETT & VALERINO, LLP<br>Attorneys at Law<br>511 East Fayette Street<br>Syracuse, New York  13202<br>  BY:  KIMBERLY A. SLIMBAUGH, ESQ. |
| For Defendant: | SOCIAL SECURITY ADMINISTRATION<br>6401 Security Boulevard<br>Baltimore, Maryland  21235<br>  BY:  CANDACE BROWN CASEY, ESQ. |

*Jodi L. Hibbard, RMR, CSR, CRR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York  13261-7367*
*(315) 234-8547*

1        (The Court and counsel present by telephone.)
2        THE COURT:  Thank you.  I appreciate the excellent
3   presentations by both of you.
4        Before I turn to the merits of the case, I wanted
5   to address the subject of consent.  When this case was
6   initially filed, it was assigned to now-retired United States
7   Magistrate Judge Christian F. Hummel.  It has twice I think
8   since been reassigned and ultimately I am now the assigned
9   magistrate judge.  The consent form that was filed in this
10  case on behalf of the plaintiff, it's Docket Number 6,
11  specifically consented to the jurisdiction of Judge Hummel.
12  So Attorney Slimbaugh, I know that you were asked to indicate
13  within a certain period of time whether you did not consent
14  to my jurisdiction but I still wanted to confirm, do you
15  consent to my hearing and deciding this case with direct
16  appeal to the United States Court of Appeals for the Second
17  Circuit?
18        MS. SLIMBAUGH:  Yes, your Honor.
19        THE COURT:  Thank you.  Plaintiff has commenced
20  this proceeding pursuant to 42 United States Code Section
21  405(g) to challenge an adverse determination of the
22  Commissioner of Social Security finding that she was not
23  disabled at the relevant times and therefore is ineligible
24  for the benefits for which she applied.
25        The background is as follows:  Plaintiff was born

1   in January of 1977, she is currently 48 years of age.  She
2   was 44 years old at the alleged onset of disability on May 1,
3   2021.  Plaintiff stands 5 foot 3 inches in height and weighs
4   approximately 180 pounds.  Plaintiff lives in Oneida,
5   New York in a two-story home with her fiance of 20 years.
6   Plaintiff has a high school degree and two years of college
7   education.  During her education, she was in regular classes
8   rather than special education.  Plaintiff drives, although
9   the evidence is equivocal on that score.  At page 893 it
10  indicates she drives; during the hearing at page 61 she
11  testified she does not drive since her stroke which occurred
12  in May of 2021; however, at page 641, there is an indication
13  she drove herself to the examination by Dr. Noia on
14  October 10, 2022; and at 893, there's an indication she drove
15  herself to the examination of Dr. Long on May 11, 2023.  When
16  employed, plaintiff worked as a medical biller for several
17  years, ending in approximately April of 2018.  She also
18  worked as a workers' compensation adjustor.  That appears to
19  have been a part-time job five days a week, three days --
20  three hours per day.  This was after her stroke.  It occurred
21  from December 2021 to September of 2022.  She also worked for
22  an auto auction company, taking photographs and doing other
23  type of work.
24          Physically, plaintiff suffers from chronic
25  migraines with unknown triggers; post cerebrovascular

1   accident, she had a stroke, as I indicated, in May of 2021;
2   post patent foramen ovale closure in September 2021; atrial
3   fibrillation, or A-fib; post insertion of loop recorder in
4   September 2021; Ebstein anomaly; cardiac dysthymias right;
5   and right lumbosacral radiculopathy.  She has had several
6   emergency department visits to the hospital, including in May
7   of 2021 for her stroke.
8          Mentally, plaintiff suffers from depression,
9   sometimes characterized as major depressive disorder, she
10  suffers also from bipolar disorder and post-traumatic stress
11  disorder, or PTSD.  Plaintiff has not undergone any
12  psychiatric hospitalization or significant outpatient
13  treatment, although she did present to CPEP in October of
14  2022, that's at page 703 to 709, and was referred to
15  outpatient counseling.  She now undergoes weekly
16  psychotherapy and monthly medication management.
17         Procedurally -- I'm sorry.  Plaintiff's activities
18  of daily living, which are referenced at various points in
19  the record including at 643, 646, 890, and 895, plaintiff is
20  able to dress, bathe, groom -- once again the evidence is
21  equivocal as to whether she can cook, at 890 there's
22  indication she cannot, at 895 she can -- light cleaning,
23  laundry, no shopping, she drives, she watches television,
24  listens to the radio, she participates in social media, she
25  is engaged in crafting and sewing, and she goes to the gym.

1  Plaintiff is a smoker.  She smokes one-and-a-half packs a
2  day, or did until 2021, that's at 890 and at various places
3  in her medical treatment records.
4          Procedurally, plaintiff applied for Title II
5  benefits on May 20, 2022, alleging an onset date of May 1,
6  2021.  At page 253 she alleged disability based on blind or
7  low vision, back, Ebstein anomaly of heart, and stroke.
8  There was no mention at that point of her migraine headaches.
9  A hearing was conducted by Administrative Law Judge, or ALJ,
10 Bruce Fein to address plaintiff's application for benefits on
11 November 28, 2023.  Judge Fein issued an adverse
12 determination on December 14, 2023, and that decision became
13 a final determination of the Agency on August 13, 2024, when
14 the Social Security Administration Appeals Council denied
15 plaintiff's application for review.  This action was
16 commenced on September 23, 2024, and is timely.
17         In his decision, ALJ Fein applied the familiar
18 five-step sequential test for determining disability.
19         At step one, he noted that plaintiff has not
20 engaged in substantial gainful activity since her alleged
21 onset date.  He did note that she has performed some work
22 since then but it is below the SGA threshold.
23         At step two, the administrative law judge concluded
24 that plaintiff does suffer from severe impairments that
25 impose more than minimal limitations on her ability to

1   perform basic work functions, and specifically post
2   cerebrovascular accident, migraines, post patent foramen
3   ovale closure, atrial fibrillation, Ebstein anomaly, post
4   placement of loop recorder, and right lumbosacral
5   radiculopathy, as well as mental impairments, including major
6   depressive disorder, generalized anxiety disorder, and
7   post-traumatic stress disorder.
8            At step three, ALJ Fein concluded that plaintiff's
9   conditions do not meet or medically equal any of the listed
10  presumptively disabling conditions set forth in the
11  Commissioner's regulations, specifically considering listings
12  1.15, 1.16, 1.18, 4.05, 11.02, 11.04, 12.04, 12.06, and
13  12.15.
14           The administrative law judge next surveyed the
15  entire record and concluded that notwithstanding her
16  limitations, plaintiff is capable of performing light work as
17  defined in the regulations, except she can perform all
18  postural activities occasionally, except no climbing ropes,
19  ladders, or scaffolds, she should avoid concentrated exposure
20  to unprotected heights, hazardous machinery, operational
21  control of moving machinery, bright and/or flashing lights,
22  and noises at loud or higher level per DOT/SCO.  She is
23  limited to occupations requiring only occasional peripheral
24  acuity.  Her work is limited to simple, routine, and
25  repetitive tasks with no production-rate or pace work

1 involved.  She can have occasional interaction with
2 coworkers, supervisors, and the public, and she should work
3 in a low stress job, defined as only occasional decision
4 making, changes in work setting, and judgment required on the
5 job.
6     At step four, applying that RFC, the administrative
7 law judge concluded that plaintiff is incapable of performing
8 her past relevant work, which was characterized as medical
9 biller, photography, parking lot attendant, and data entry
10 clerk.
11     At step five, with the assistance of testimony from
12 a vocational expert, plaintiff, the ALJ found, is capable of
13 performing available work in the national economy, citing as
14 examples office helper, cafeteria attendant, and mail clerk,
15 and concluded that she was therefore not disabled and
16 eligible for benefits.
17     As the parties are aware, the court's function in
18 this case is limited to determining whether correct legal
19 principles were applied and substantial evidence supports the
20 resulting determination.  The deferential nature of the
21 standard to be applied was addressed by the Second Circuit at
22 various times dating back to *Brault v. Social Security*
23 *Administration Commissioner*, 683 F.3d 443 from 2012 and later
24 reiterated many times, including in *Schillo v. Kijakazi*, 31
25 F.4th 64, Second Circuit 2022.  As the Second Circuit

1  explained, the substantial evidence standard means that once
2  an ALJ finds a fact, that fact can be rejected only if a
3  reasonable fact finder would have to conclude otherwise.
4           In this case, plaintiff raises two basic
5  contentions.  She believes the residual functional capacity
6  finding is not supported, and cites errors in the evaluation
7  of medical opinions from Dr. Long and Nurse Practitioner
8  DeMarche, the focus being specifically on whether plaintiff
9  would be absent and off task to a degree that would be
10 disqualifying from employment, and really focusing on her
11 migraine headaches.
12          The second is a related argument that there is no
13 limitation in the RFC to account for plaintiff's migraine
14 headaches.
15          The first -- the first task of the administrative
16 law judge is to determine a plaintiff's RFC, which represents
17 a finding of the range of tasks the claimant is capable of
18 performing notwithstanding her impairments.  20 C.F.R.
19 Section 404.1545(a), *Tankisi v. Commissioner of Social*
20 *Security*, 521 F.App'x 29 from the Second Circuit 2013.  An
21 RFC ordinarily represents a claimant's maximum ability to
22 perform sustained work activities in an ordinary setting on a
23 regular and continuing basis, meaning eight hours a day for
24 five days a week or an equivalent schedule, and of course an
25 RFC is informed by consideration of a claimant's physical and

1    mental abilities, symptomology, and other limitations that
2    could interfere with work activities on a regular and
3    continuing basis, as well as all the relevant medical and
4    other evidence.  20 C.F.R. Section 404.1545(a)(3).
5            In this case, the focus is on primarily medical
6    opinions in the record.  Those opinions, because this case
7    involves an application that was filed after March 27, 2017,
8    is subject to amended regulations regarding the evaluation of
9    opinion evidence.  Under those regulations, the Commissioner
10   does not defer or give any specific evidentiary weight,
11   including controlling weight, to any medical opinions,
12   including those from treating sources.  Instead, medical
13   opinions must be determined or examined as to whether they
14   are persuasive by primarily considering whether they are
15   supported by and consistent with the record in the case.
16   20 C.F.R. Section 404.1520c.  An ALJ must articulate in his
17   or her determination as to how persuasive he or she finds the
18   medical opinions of record and explain how he or she
19   considered the elements of supportability and consistency.
20   20 C.F.R. Section 404.1520c.  There are other factors which
21   may be addressed but need not be stated in the explanation.
22   And of course the explanation must be sufficient to permit
23   meaningful judicial review.  Importantly, in the first
24   instance, it is for an ALJ to weigh conflicting medical
25   opinions.  *Veino v. Barnhart*, 312 F.3d 578, Second Circuit,

```
 1    2002.
 2                In this case, as a backdrop, I note that there is
 3    quite a fulsome discussion of plaintiff's treatment over
 4    time, including involving her migraine headaches.  That
 5    appears at pages 18 through 27 of the Administrative
 6    Transcript.
 7                The first opinion at issue is from Dr. Sara Long.
 8    It is dated May 11, 2023, it appears at page 893 to 896 of
 9    the Administrative Transcript.  In her medical source
10    statement, Dr. Long states that she does not discern any
11    limitations regarding plaintiff's performance of simple
12    tasks.  Regarding complex tasks, there appear to be mild
13    limitations post stroke.  There do not appear to be
14    limitations regarding making appropriate decisions and
15    interacting adequately with others.  There may be mild to
16    moderate limitations regarding maintaining attention and
17    concentration and maintaining a regular schedule.  There
18    appear to be moderate limitations regarding regulating
19    emotions.  Do not appear to be any limitations regarding
20    controlling behavior, maintaining personal hygiene, and
21    awareness of appropriate precautions.  At the end of the
22    medical source statement, there is the typical catchall
23    statement, results of the present evaluation appear to be
24    consistent with psychiatric and cognitive problems which
25    appear to significantly interfere with her ability to
```

1  perform -- sorry, function on a regular basis.
2            The administrative law judge, as plaintiff has
3  argued, concluded that that was most persuasive.  It was
4  addressed at page 30 of the Administrative Transcript.  There
5  was a portion of it rejected.  The portion that was rejected
6  was Dr. Long's further determination that the claimant had
7  mild limitations regarding complex tasks and no limitations
8  regarding interacting adequately with others, and of course
9  that inures really to plaintiff's benefit because, number
10 one, there are no complex tasks anyway in the RFC which
11 limits plaintiff to simple work, and secondly, there was a
12 greater limitation in the RFC for interacting with others.
13           The focus really is on the mild to moderate
14 limitations maintaining attention and concentration and a
15 regular schedule.  Dr. Long in her examination termed
16 plaintiff's attention and concentration as intact at page
17 894, and recent and remote memory skills as intact, again at
18 page 894, although, as plaintiff has argued, she did note
19 that after five minutes, plaintiff could only recall two of
20 the objects.
21           The opinion of Dr. Long is consistent with other
22 opinion evidence in the record, including Dr. Noia's opinion
23 after his consultative examination.  It's also consistent
24 with the treatment history.  It is supported by exam findings
25 and plaintiff's treatment records which I have reviewed

1 carefully. As I said, the only portion that was really
2 rejected was because the ALJ found greater limitations, which
3 does not provide a basis to overturn.
4 　　　　　As the Commissioner has argued, the fact that the
5 plaintiff may have mild to moderate limitations is not
6 inconsistent with the performance of unskilled work as
7 specified in the RFC. *Porteus v. O'Malley*, 2024 WL 2180203
8 from May of 2024, May 15th, Northern District of New York,
9 and *Richard H. v. Saul*, 2020 WL 467734 from the Northern
10 District of New York, January 29, 2020. So I don't find any
11 error in the evaluation of Dr. Long's opinion, and I don't
12 believe it is, in the end, inconsistent with the residual
13 functional capacity finding in this case.
14 　　　　　The other medical opinion that is addressed by
15 plaintiff is from Nurse Practitioner Erika DeMarche. It is
16 dated September 12, 2023, it appears at pages 1264 through
17 1269. It lists at page 1265 several, many symptoms that the
18 plaintiff suffers from. At page 1266 it indicates, there are
19 A through P mental abilities and aptitudes needed to do
20 unskilled work in this check-box form and five categories,
21 unlimited or very good, limited but satisfactory, seriously
22 limited, unable to meet competitive standards, and no useful
23 ability to function. And with three exceptions, there is an
24 indication that plaintiff is either unable to meet
25 competitive standards or has no useful ability to function in

1   those specified domains.  At page 1267, under the category
2   mental abilities and aptitudes needed to do semi-skilled and
3   skilled work, there are four categories, and according to the
4   nurse practitioner, plaintiff has no useful ability to
5   function in any of those four.  On page 1268 it indicates
6   that plaintiff would likely be off task 25 percent or more of
7   the day and would likely be absent more than four days per
8   month.
9             The administrative law judge addressed that medical
10  source statement at pages 31 and 32 and found the opinion to
11  be unpersuasive.  As I indicated, it is a check-box form with
12  really no explanation and although that does not, under the
13  Second Circuit's decision in *Colgan*, provide alone a basis to
14  discount the evaluation, it certainly limits its usefulness.
15  The administrative law judge cited several reasons for
16  discounting it.
17            One, treatment notes of the nurse practitioner
18  failed to support the disabling assessments, recognizing of
19  course that there were some adverse findings, especially
20  early on in 2023 when the nurse practitioner began treating
21  the plaintiff.
22            But the second reason is that over time, it appears
23  from the treatment notes that, and I've confirmed this by my
24  review of the notes, that gradually plaintiff's symptomology,
25  psychiatric symptomology, was reduced with treatment and

1   medication.
2           The third reason is there's no suggestion that the
3   nurse practitioner ever performed any formal testing of the
4   claimant's attention and concentration that would support the
5   opinion of plaintiff being off task and absent to a degree
6   that would preclude employment.
7           Four, the estimation that the nurse practitioner --
8   of the nurse practitioner that claimant would be absent from
9   work more than four days per month is conjectural and not
10  supported.
11          And five, the assessment of the claimant by Nurse
12  Practitioner DeMarche is inconsistent with opinions from
13  Dr. Long and Dr. Noia.  I find that that was -- constituted
14  an adequate explanation and is supported by substantial
15  evidence.
16          I did review plaintiff's treatment records and
17  included among those is Exhibit 3F from Crouse Medical and
18  there are indications there that are inconsistent with
19  plaintiff's argument concerning the intensity.
20          On August 13, 2021, at page 468 to 471, although it
21  does indicate no improvement in migraines but some reduction
22  in symptomology with medication, the statement is there's no
23  significant disability, plaintiff is able to carry out usual
24  duties and activities.  That's a statement from Physician
25  Assistant Alyssa Seldes.

1        On December 1, 2021, at pages 472 to 475, there's
2   an indication no migraines recently, no symptoms at all, no
3   headaches in the past couple weeks, again from the same
4   physician's assistant.
5        On July 14, 2022, although I think that should be
6   July 2021, I think there's an error, at 476 to 478, plaintiff
7   is doing -- reportedly doing well, headaches better since
8   starting medication, no new complaints.
9        On June 21, 2021, at page 479 to 483, headaches
10  more constant since stroke but no significant disability,
11  able to carry out duties and activities.
12       So I agree with the Commissioner that the treatment
13  records do not support Nurse Practitioner DeMarche's
14  assertion or the assertion that plaintiff would be off task
15  and/or absent to a degree that would preclude employment.
16       I also note that in the prior administrative
17  medical findings which can provide substantial evidence,
18  although there is no specific statement that plaintiff can
19  maintain a regular schedule, I believe it's implicit in those
20  because those are essentially under the Regulations supposed
21  to be opinions as to whether plaintiff can perform, and if
22  so, with what limitations on a regular basis, meaning eight
23  hours a day, five days a week.
24       So in short, I believe that the result in this case
25  is supported by substantial evidence.  And I don't believe

1   that plaintiff has shown that no reasonable fact finder could
2   conclude as the administrative law judge did, so I will grant
3   judgment on the pleadings to the defendant and order
4   dismissal of plaintiff's complaint.  I appreciate, again,
5   your oral arguments, and I hope you both have a good
6   afternoon.
7                MS. BROWN CASEY:  Thank you.
8                     (Proceedings Adjourned, 11:40 a.m.)

```
 1              CERTIFICATE OF OFFICIAL REPORTER
 2
 3
 4      I, JODI L. HIBBARD, RMR, CRR, CSR, Federal
 5   Official Realtime Court Reporter, in and for the
 6   United States District Court for the Northern
 7   District of New York, DO HEREBY CERTIFY that
 8   pursuant to Section 753, Title 28, United States
 9   Code, that the foregoing is a true and correct
10   transcript of the stenographically reported
11   proceedings held in the above-entitled matter and
12   that the transcript page format is in conformance
13   with the regulations of the Judicial Conference of
14   the United States.
15
16                 Dated this 24th day of September, 2025.
17
18
19                         /S/ JODI L. HIBBARD
20                         JODI L. HIBBARD, RMR, CRR, CSR
                           Official U.S. Court Reporter
21
22
23
24
25
```